IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 10, 2026

## STATE OF TENNESSEE v. TIMOTHY CHRISTOPHER PILLOW

**Appeal from the Criminal Court for Davidson County
No. 2021-D-2018, 2024-D-2094   Steve R. Dozier, Judge**

_____

### No. M2025-00720-CCA-R3-CD

_____

Defendant, Timothy Christopher Pillow, pleaded guilty to unlawful possession of a firearm by a violent felon, evading arrest with a motor vehicle, and identity theft. At sentencing, Defendant requested an alternative sentence under the Community Corrections Act. Instead, the trial court imposed an effective sentence of eleven years' incarceration, finding that Defendant's history of criminal conduct and the need to avoid depreciating the seriousness of the current offenses warranted confinement. On appeal, Defendant contends that the trial court erred in denying his request for community corrections. Following our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J. and CAMILLE R. MCMULLEN, J., joined.

Martesha Johnson Moore, District Public Defender; Emma Rae Tennent (on appeal) and Cody Fisher (at hearing), Assistant Public Defenders, for the appellant, Timothy Christopher Pillow.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Joshua R. Gilbert, Legal Assistant (*pro hac vice*); Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

In 2021, Defendant was arrested after a drug deal gone bad in Nashville. Police officers on routine patrol heard multiple gunshots coming from behind a nearby building. When police approached the building, they observed Defendant running from the sound of the gunshots with a black firearm in hand. Once in custody, Defendant told police that he was there to sell drugs and that his would-be customer tried to rob him. He admitted to firing the gunshots but only in response to the robbery attempt. Police recovered more than one and a half pounds of marijuana, thirteen grams of cocaine, more than one-half gram of methamphetamine, and the firearm—which was later discovered to be stolen. A Davidson County Grand Jury indicted Defendant on six counts: (1) possession with intent to sell or deliver one-half gram or more of methamphetamine; (2) possession with intent to sell or deliver less than ten pounds of marijuana; (3) unlawful possession of a firearm by a violent felon; (4) possession of a firearm during the commission of a dangerous felony (to wit, Count One); (5) possession of a firearm during the commission of a dangerous felony (to wit, Count Two); and (6) theft of a firearm. The case was set for a jury trial, but after being arraigned and released on bond, Defendant failed to appear.

Three years later—having never appeared for the 2021 case—Defendant was arrested after he evaded police attempting to initiate a traffic stop. Police were responding to a parking lot on John A. Merritt Boulevard in Nashville for a possible assault after receiving a 911 call about a male forcing a female into the backseat of a white sports utility vehicle (SUV). When police arrived, they observed Defendant attempting to exit the parking lot while driving a white SUV with a female passenger in the back seat. When police activated their emergency lights, Defendant sped away, weaving in and out of traffic. An aviation unit spotted his vehicle stopped at a nearby intersection, and after a brief foot pursuit, he was apprehended. Police recovered four small bags containing approximately fourteen grams of crack cocaine from Defendant's pocket, fentanyl, and a chain of miniature spoons, which are often used to ingest cocaine, from around his neck. Once in custody, Defendant gave police a false name, and officers located a Georgia driver's license belonging to someone else. Defendant was indicted on nine counts, including: (1) possession with intent to sell or deliver one-half gram or more of cocaine; (2) possession with intent to sell or deliver one-half gram or more of any substance containing fentanyl; (3) evading arrest with a motor vehicle while creating the risk of death or injury to innocent bystanders; (4) reckless endangerment with a motor vehicle; (5) identity theft; (6) evading arrest; (7) assumption of a false identity with the intent to injure or defraud another person; (8) possession of drug paraphernalia; and (9) operating a motor vehicle without a driver's license.

- 2 -

Following the second indictment in 2024, Defendant negotiated a plea agreement to a below-range effective sentence that resolved both the 2021 and 2024 cases.[1] Under the global plea agreement, Defendant—who had two prior felony convictions for aggravated robbery—pleaded guilty to unlawful possession of a firearm by a violent felon in the 2021 case, and evading arrest with a motor vehicle and identity theft in the 2024 case. In exchange, the State dismissed the remaining twelve charges. As to sentencing, Defendant agreed to serve concurrent two-year sentences for evading arrest with a motor vehicle and identity theft. He also agreed to an eight-to-ten-year sentencing range for unlawful possession of a firearm by a violent felon, with the specific length and manner of service to be determined by the trial court following a sentencing hearing. Although the parties agreed that Defendant was a Range II offender, each of his agreed-upon sentences was below their respective statutory sentencing ranges.[2] Because Defendant was on bond for the 2021 case when he was arrested in 2024, the concurrent two-year sentences were to run consecutively to his sentence for the unlawful possession of a firearm conviction.[3]

At sentencing, Defendant called his half-sister and sister to testify on his behalf. Both were supportive of Defendant and the progress he had made since his arrest in the second case. Both testified that Defendant was introduced to drugs at a young age by his parents. Defendant's half-sister said that Defendant's exposure to illegal drugs came as early as ten years old. By age eleven, Defendant was selling drugs to buy clothes and food. She testified that Defendant was in and out of juvenile detention facilities throughout his early teen years. By age fifteen, he was in the continuous care of the Department of Children's Services. His half-sister noticed that his peak drug use occurred in the wake of his mother's death while he was incarcerated as an adult. She directed her final remarks to the trial court, asking the court "to take in for consideration [] the fact that he has spent more time behind jail [than] he has been free. And he's never, ever had any type of therapy

---

[1] *See Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997) (permitting out-of-range sentences when the result of a plea agreement knowingly and voluntarily entered into by defendant).

[2] Evading arrest with a motor vehicle and identify theft, as charged in the 2024 indictment, are both Class D felonies. *See* Tenn. Code Ann. §§ 39-16-603(b)(1), -(d)(2)(B); 39-14-150(b), -(i)(1). Unlawful possession of a firearm by a violent felon is a Class B felony. Tenn. Code Ann. § 39-17-1307(b)(1)(A), -(b)(2). By virtue of his two prior convictions for aggravated robbery, Defendant was classified as a Range II, multiple offender. Tenn. Code Ann. § 40-35-106(a). Thus, the applicable sentencing range for the Class B felony was "not less than twelve (12) nor more than twenty (20) years," Tenn. Code Ann. § 40-35-112(b)(2), and the applicable sentencing range for the two Class D felonies was "not less than four (4) nor more than eight (8) years," Tenn. Code Ann. § 40-35-112(b)(4).

[3] *See* Tenn. R. Crim. P. 32(c)(3)(C) (providing mandatory consecutive sentences for "a sentence for a felony committed while the defendant was released on bail and the defendant is convicted of both offenses.").

or any type of rehabilitation. And he has a lot of childhood traumas . . . [that have] just never been addressed."

Defendant's sister said that she and Defendant were born in California but moved to Tennessee with their father at ages five and four, respectively. She testified that Defendant suffered severe physical abuse at the hands of their father throughout their childhood. Their father was a heavy drug user who often lost his temper, and Defendant would regularly take the beatings meant for his sister. His sister said that this was her first time speaking in court on Defendant's behalf. She said she decided to speak because she could see growth in him. For example, he recently had been baptized and received his GED. She said that because both their parents had passed away, she believed that Defendant knew it was time to "get it together."

During his allocution, Defendant stated that he had anger issues since he was young, which were caused by the absence of his mother, the murder of a brother when Defendant was four years old, and the death of a sister when he was five years old. He stated that he was sexually abused by an older cousin who would tell him that he would be taken away and become an orphan if he told anyone about the abuse. His father would beat him for things that he did not understand. He began selling drugs at age eleven, and by age fourteen, he was using cocaine regularly. He stated that he was afraid to let people know that he needed help because he was afraid they would abandon him. After he and his girlfriend ended their relationship, Defendant "started using fentanyl and ice every day." Defendant told the trial court that he had renounced his gang affiliations and asked the court for help with his anger, addiction, and mental health issues. Defendant also exhibited a letter of acceptance into a twelve-month residential treatment program known as Men of Valor and certificates showing his successful completion of job training courses taken while incarcerated.

The State exhibited Defendant's presentence report, which included a STRONG-R risk and needs assessment of a "high" risk to reoffend, and highlighted Defendant's "horrible" criminal record, noting that it is unusual to see an offender with two separate convictions for aggravated robbery. Defendant was convicted of aggravated robbery in 2000 and again in 2010. He was released from prison in 2020, but he was arrested in this case only a year later. He continued to possess and use firearms, despite his previous felony convictions for aggravated robbery, and he was caught on video engaging in a fire fight in a residential area of Nashville in broad daylight. The State also pointed out that Defendant failed to appear for his jury trial in the first case.

Defendant submitted a sentencing memorandum in which he requested a community corrections sentence. He acknowledged that his conviction for unlawful possession of a firearm by a violent felon would normally preclude his eligibility for

community corrections; however, he argued that the trial court could sentence him to community corrections if it found that he had special needs that were treatable and best served in the community. He further argued that two mitigating factors should be applied. With respect to his conduct in the first case, Defendant argued that mitigating factor three applied because he only used his weapon in self-defense. *See* Tenn. Code Ann. § 40-35-113(3) ("Substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense."). Defendant also argued that his traumatic childhood experiences and the lack of opportunities for rehabilitation afforded to him in the past should be considered as mitigating evidence of his conduct. *See id.* at -113(13) ("Any other factor consistent with the purposes of this chapter."). In support, Defendant exhibited a research study linking "adverse childhood experiences" with negative health outcomes, and he argued that while his adverse childhood experiences did not excuse his criminal conduct, "they do mitigate his culpability insofar as they have affected his decision making into adulthood."

The trial court took the matter under advisement and issued a sentencing order four days later. In imposing the sentences, the court stated that it considered the evidence from the plea hearing and sentencing hearing, the presentence report, the principles of sentencing and arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct involved, evidence offered on enhancement and mitigating factors, statistical information provided by the Administrative Office of the Courts, Defendant's allocution, and finally, Defendant's STRONG-R risk and needs assessment. The court applied two enhancement factors. *See* Tenn. Code Ann. § 40-35-114. First, the court found that Defendant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." *See id.* at -114(1). Second, the court found that "Defendant was released on bond for the [first case] when he was arrested [in the second case]." *See id.* at -114(2). As to mitigation, the court found only mitigating factor thirteen—the "catch-all" factor—to be applicable, recognizing the impact that Defendant's childhood experiences had on his adult behavior. *See id.* at -113(13). The court observed that the parties had agreed to below-range sentences for all three counts, and consistent with their agreement, the court imposed a term of nine years, at 85 percent release eligibility,[4] for the unlawful possession of a firearm charge in the 2021 case and two concurrent two years sentences, at 30 percent release eligibility, for the evading arrest and identify theft charges in the 2024 case. As to the manner of service, the court found that "the special needs eligibility could support Defendant's history of largely untreated mental health concerns and substance abuse issues." The court ultimately decided that Defendant's "lengthy history of criminal conduct" supported a sentence of confinement.

---

[4] *See* Tenn. Code Ann. § 40-35-501(y)(2)(A) (requiring persons convicted of unlawful possession of a firearm by a violent felon to serve 85 percent of sentence imposed by the trial court).

The court also "emphasize[d] . . . the seriousness of this type of offense and decline[d] to depreciate the deterrent effect by releasing Defendant onto a probated sentence." In support of this conclusion, the court cited Defendant's STRONG-R risk and needs assessment, which classified Defendant as having "high propensities for violence, property, and drug risk." The court ended by saying that it was "sorrowful for Defendant's past" but the court recognized it had "a duty to protect the public from a person whose impulsivity has continually led them back to violence, firearms, and drugs." This appeal followed.

**Analysis**

In this appeal, Defendant challenges the manner of service of his sentences and argues that the trial court erred in sentencing him to a term of confinement rather than a term of community corrections. He claims he is eligible for a community corrections sentence because of his "established . . . special needs relating to his drug addiction and post-traumatic stress disorder." He emphasizes that he has never been placed on probation or community corrections, and he argues that continuous confinement is not necessary to protect society because society is better served by his treatment in the community. To support his claim, Defendant relies on his new-found sobriety, his completion of several vocational programs while incarcerated, and his willingness to admit responsibility for his crimes. Finally, Defendant argues that his effective sentence of eleven years is not the least severe measure necessary to achieve the purposes of sentencing. In response, the State argues that Defendant failed to show any error by the trial court and Defendant is asking this court to reweigh the evidence presented in favor of alternative sentencing. We agree with the State.

The Tennessee Community Corrections Act of 1985 provides that "[a]n offender who meets all of the following minimum criteria shall be considered eligible for punishment in the community . . . ." Tenn. Code Ann. § 40-36-106(a)(1). Those "criteria" include:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted felony offenses;

- 6 -

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F) Persons who do not demonstrate a pattern of committing violent offenses;

(G) Persons who have not been convicted of a sexual offense under title 29, chapter 13, part 5;

(H) Persons who do not meet the definition of a sexual offender or violent sexual offenses under § 40-39-202; and

(I) Persons who are not required to serve a sentence of community supervision for life under § 39-13-524.

*Id*. Offenders who are disqualified under the above criteria may become eligible under the so-called "special needs" exception, which provides:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under this chapter.

*Id*. at -106(c). Further, probation eligibility is a prerequisite to being sentenced under the "special needs" exception. *See State v. Johnson*, 342 S.W.3d 520, 523-24 (Tenn. Crim. App. 2009) (collecting cases); *State v. Murray*, No. M2022-01525-CCA-R3-CD, 2023 WL 6290684, at *3 (Tenn. Crim. App. Sept. 27, 2023). The trial court must also make the following findings when sentencing an offender under the "special needs" exception:

> (1) the offender has a history of chronic alcohol, drug abuse, or mental health problems, (2) these factors were reasonably related to and contributed to the offender's criminal conduct, (3) the identifiable special need (or needs) are treatable, and (4) the treatment of the special need could be served best in the community rather than a correctional institution.

*State v. Boston*, 938 S.W.2d 435, 439 (Tenn. Crim. App. 1996); *see also Murray*, 2023 WL 6290684 at *3. Although an offender may meet the minimum eligibility requirements under the Community Corrections Act, no offender is entitled to a community corrections sentence as a matter of right. *See State v. Sharp*, 327 S.W.3d 704, 716 (Tenn. Crim. App. 2010).

Because a sentence under the Community Corrections Act is considered an alternative sentence, courts must consider whether a defendant is a favorable candidate for alternative sentencing under the purposes and principles of our Criminal Sentencing Reform Act of 1989. *See State v. Grigsby*, 957 S.W.2d 541, 545 (Tenn. Crim. App. 1997). Broadly speaking, "punishment shall be imposed to prevent crime and promote respect for the law by," among other things, "[e]ncouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants." Tenn. Code Ann. § 40-35-102(3)(C). Yet only those offenders who are classified as "an especially mitigated or standard offender convicted of a Class C, D, or E felony" are considered favorable candidates for alternative sentencing. *See id*. at -102(6)(A); *Sharp*, 327 S.W.3d at 716. Criminal defendants who are "being sentenced for a third or subsequent felony conviction" are not considered favorable candidates for alternative sentencing if their previous convictions involved "separate periods of incarceration or supervision." *Id*. at -102(6)(A). When imposing confinement, trial courts should base their sentences on one or more of the following factors:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1); *Sharp*, 327 S.W.3d at 716. Whatever the sentence imposed, it "should be no greater than that deserved for the offense committed," and it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id*. at -103(2), (4).

Trial courts enjoy broad discretion in imposing within-range sentences that reflect the principles and purposes of our Sentencing Act. *See State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). Accordingly, we review the length and manner of service of within-range

sentences imposed by the trial court under an "abuse of discretion standard with a 'presumption of reasonableness.'" *Id*. "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps¸* 329 S.W.3d 436, 443 (Tenn. 2010). The abuse of discretion standard applies to all sentencing decisions, *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014), including "questions related to probation or any other alternative sentence," *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). To be afforded deference on appeal, the trial court must "place on the record any reason for a particular sentence." *Bise*, 380 S.W.3d at 705. There is no presumption of reasonableness when the trial court fails to consider and weigh the applicable factors. *See King*, 432 S.W.3d at 327-28; *Caudle*, 388 S.W.3d at 279. The party challenging the sentence bears the burden of showing that the sentence is improper. *See* Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmt.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In applying the abuse of discretion standard to the present case, we conclude that the trial court's decision to impose confinement rather than community corrections reflected a "proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 708. The trial court placed its reasons for imposing confinement on the record; therefore, its denial of community corrections is entitled to a presumption of reasonableness. *See id*. at 705. In his brief, Defendant fails to identify any instance where the trial court applied an incorrect legal standard, reached an illogical conclusion, based its ruling on a clearly erroneous assessment of the proof, or applied reasoning that caused an injustice. *See Phelps*, 329 S.W.3d at 443. Instead, Defendant asks us to reweigh the evidence to reach a different conclusion, but merely reweighing the evidence, absent an abuse of discretion, is insufficient to overcome the presumption of reasonableness to which the trial court's sentencing decision is entitled.

Defendant was not a favorable candidate for alternative sentencing, and this supports the reasonableness of the trial court's decision. Defendant pleaded guilty, as a Range II multiple offender, to the unlawful possession of a firearm by a violent felon, a Class B felony, but only offenders classified as "an especially mitigated or standard offender convicted of a Class C, D, or E felony" are considered favorable candidates for alternative sentencing. Tenn. Code Ann. § 40-35-102(6)(A). Further, our Sentencing Act also makes clear that "a defendant who is being sentenced for a third or subsequent felony conviction involving separate periods of incarceration or supervision shall not be considered a favorable candidate for alternative sentencing." *Id*. Defendant had two prior convictions for aggravated robbery, for which he served two separate periods of incarceration; he pleaded guilty to three additional felonies in this case; thus, he was being sentenced for his "third or subsequent felony" and each conviction involved "separate periods of incarceration." *Id*. We also note that Defendant concedes that his conviction

for unlawful possession of a firearm by a violent felon disqualified him under the Community Corrections Act. *See* Tenn. Code Ann. § 40-36-106(a)(1). True, the trial court acknowledged that the special needs provision of the Community Corrections Act "could support" Defendant's eligibility for a community corrections sentence, *see* Tenn. Code Ann. § 40-36-106(c), but mere eligibility under the Community Corrections Act does not create an entitlement or right to a community corrections sentence, *see Sharp*, 327 S.W.3d at 716.

Even if Defendant had been a favorable candidate for alternative sentencing, the trial court appropriately exercised its discretion when it relied upon Defendant's "long history of criminal conduct" and the need to "avoid depreciating the seriousness of the offense[s]" to impose a sentence of continuous confinement. Tenn. Code Ann. § 40-35-103(1)(A), (B); *see also Sharp*, 327 S.W.3d at 716 (favorable status may be overcome by finding that confinement is necessary under Tenn. Code Ann. § 40-35-103(1)(A)). Beyond Defendant's two prior convictions for aggravated robbery, he had numerous infractions while incarcerated, as evidenced in the presentence report. Defendant's conduct in the two present cases—which included ongoing drug sales, discharging a stolen firearm in a residential neighborhood, identity theft, evading arrest, and failing to appear—supported the court's decision to impose confinement. *See, e.g.*, *State v. Rogers*, No. E2024-01210-CCA-R3-CD, 2025 WL 3240451, at *4 (Tenn. Crim. App. Nov. 20, 2025) (viewing nature of convictions as reasonable evidence of defendant's "unwillingness to comply with lawful authority and the continuing danger his conduct posed to law enforcement and the public."). The consideration of Defendant's criminal history and his current charges were consistent with the purposes and principles of our Sentencing Act in that the trial court recognized the need to "protect the public from a person whose impulsivity has continually led them back to violence, firearms, and drugs."

Defendant asks us to find that his conduct was "not so shocking and reprehensible" as to preclude alternative sentencing. We note that this heightened standard for denying alternative sentencing applies only in cases where the sole basis of denial was the need to avoid depreciating the seriousness of the offenses. *See State v. Trent*, 533 S.W.3d 282. 292 (Tenn. 2017). Here, the record reflects that the seriousness of Defendant's conduct was just one basis for denying alternative sentencing; therefore, the heightened standard does not apply.

Finally, in response to Defendant's argument that less restrictive measures have not yet been applied, we observe that the trial court did not rely upon this factor to support confinement. Nevertheless, Defendant was still on bond—after failing to appear—in the 2021 case when he was arrested in 2024. *See State v. Trivette*, No. E2006-00129-CCA-R3-CD, 2007 WL 1687168, at *5 (Tenn. Crim. App. June 12, 2007) (concluding defendant's arrest that led to second indictment while he was on bond for initial indictment,

supports confinement over alternative sentencing).  This shows a poor amenability to rehabilitation.  *See State v. Norris*, No. M2020-00310-CCA-R3-CD, 2020 WL 7398746, at \*6 (Tenn. Crim. App. Dec. 17, 2020) (collecting cases that conclude committing offenses while on bond shows a poor amenability to rehabilitation).  For these reasons, we conclude that the trial court did not abuse its discretion, and thus Defendant is not entitled to relief.

**Conclusion**

Accordingly, we affirm the judgment of the trial court.


s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE
